UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,                          Case No. 13-cr-20303

      Plaintiff,                                   Stephanie Dawkins Davis
v.                                                 United States District Judge

DWIGHT COATES,

      Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE [#213]**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

In 2013, the Government indicted Defendant Dwight Coates and several

other defendants for conspiracy to possess with intent to distribute controlled

substances.  (ECF No. 66)  Coates, along with a local medical doctor and four

others, executed a scheme in which the doctor issued and accepted payment for

prescriptions for Roxicodone, an opiate, when there was no medical justification.

The pills prescribed were marketable on the black market and sold on the street for

various amounts by "patient recruiters."  Coates was such a "patient recruiter."

For his involvement in the scheme, Coates pleaded guilty before the Hon. Gerald

E. Rosen, who sentenced Coates in April 2015 to a term of 110 months' (9 years, 2

1

months) imprisonment to be followed by three years of supervised release.  (ECF

No. 138, PageID.464, 465).  His projected release date is on January 24, 2023.

(ECF No. 219, PageID.1255).  He has been recommended for the Residential Drug

Treatment Program, and if he is enrolled in and successfully completes it, his

release date could be moved up by 12 months—January 2022.  (ECF No. 220,

PageID.1281).

Coates is currently housed at the Oakdale II Federal Detention Center

located in Oakdale, Louisiana.  He is 47 years old and suffers from hypertension

and epileptic seizures.  Before the court is Defendant's Motion for Compassionate

release.  (ECF No. 213).  Coates filed his motion *pro se* and the court later ordered

the appointment of a federal defender to represent him in this matter.  The parties

appeared for a hearing via video conference on this matter on September 17, 2020.

Subsequently, the Government filed a notice of supplemental authority

acknowledging that under recent Sixth Circuit precedent, courts are no longer

obligated to apply the policy statement in USSG §1B1.13 in their consideration of

motions for compassionate release.  *Id.*; *United States v. Jones*, 980 F.3d 1098,

1108 (6th Cir. 2020).  Coates also filed a supplemental brief notifying the court

that he contracted COVID-19 on November 17, 2020.  ( ECF No. 224,

PageID.1529).  This court issued an order on December 3, 2020 requiring the

parties to submit supplemental briefing on the possibility of COVID-19 reinfection

and the severity of symptoms if re-infected.  (ECF No. 225).  The parties submitted

supplemental briefs on December 9, 2020 (ECF Nos. 227, 229).  The court has

reviewed all of the materials submitted by the parties.  For the reasons discussed

below, the court will GRANT Coates' Motion, reduce his sentence to time served,

institute a term of 4 years of supervised release with a condition of home

confinement for the first year, and require Coates to participate in a drug treatment

program to be selected by U.S. Probation.

## II. LEGAL STANDARD

Criminal defendants may move for compassionate release pursuant to 18

U.S.C. § 3582.  As amended by the First Step Act of 2018, the relevant statutory

language provides that a court may grant compassionate release under the

following circumstances:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction.

18 U.S.C. § 3582(c).  Thus, in order to be eligible for compassionate release under the statute, Black must exhaust his administrative remedies, show "extraordinary and compelling reasons" exist that warrant relief and show that the factors outlined in 18 U.S.C. 3553(a) warrant release.  Courts in this district previously considered the policy statement in  U.S.S.G. §1B1.13 as part of its analysis of motions for compassionate release.  But the recent precedent announced in *Jones* established that the U.S.S.G. §1B1.13 policy statement does not govern motions for compassionate release initiated by an imprisoned person.  *Jones*, 980 F.3d at 1108.  However, the court will still consider dangerousness as a part of its 3553(a) analysis.

### III. DISCUSSION

The parties agree that Coates has exhausted his administrative remedies.  (ECF No. 219, PageID.1256; ECF No. 220, PageID.1275).  Therefore, the court need not address the exhaustion requirement any further.  Rather, the court will assess whether Coates has presented extraordinary and compelling circumstances that justify relief and whether granting Coates compassionate release is consistent with factors outlined in 18 U.S.C. § 3553(a).

### A. Compelling and Extraordinary Circumstances

Coates argues that compelling and extraordinary circumstances exist in part because of the increased risk of contracting COVID-19 inside prisons. (ECF No. 220 PageID.1276). He asserts that the Federal Bureau of Prisons ("BOP") has only tested one-third of the incarcerated individuals who are currently in custody, and 114 inmates have died from COVID-19 in BOP custody. (*Id.* at PageID.1277). Coates also states that he has epilepsy and severe hypertension. (*Id.* at PageID.1282). He therefore argues that prison conditions, which increase his risk of contracting COVID-19, and his health conditions present a compelling and extraordinary circumstance that justify compassionate release. (*Id.* at PageID.1281). Second, Coates asserts that his mother is unable to care for herself because she recently suffered a stroke and is undergoing treatment for colon cancer. (*Id.* at PageID.1285). Coates asks the court to grant him release so that he can care for his mother in Kentucky, arguing that his mother's condition and need for assistance contributes to the compelling and extraordinary circumstances that justify compassionate release. *Id.*

Third, Coates argues that he has an untreated hernia for which he is unable to undergo surgery to treat because of the COVID-19 restrictions in the BOP; he also states that he also has a large cavity that is being left untreated due to the COVID-19 restrictions. (*Id.* at PageID.1286). He argues that his untreated

conditions are an extraordinary and compelling reason to grant him compassionate release because he is entitled to reasonable medical care that COVID-19 prevents him from obtaining while in BOP custody.  (*Id.* at PageID.1286–87).  Next, Coates points out that he has served the majority of his prison sentence, 59%.  (*Id.* at PageID.1280).  And, if he successfully completes a residential drug treatment program, he will be released from prison 12 months early—in  January of 2022, thus potentially increasing the percentage of time served on his sentence to 70%. *Id.*

The Government counters that Coates has not met the criteria for compassionate release because he has not advanced extraordinary and compelling reasons to justify release.  (ECF No. 219, PageID.1256).  To begin with, the Government argues that Coates' hypertension and epilepsy do not put him at a higher risk for severe illness from COVID-19.  *Id.*  It further asserts that the BOP has mitigated the risk of COVID-19 within its facilities by implementing modified operations and granting more inmates home confinement.  (ECF No. 219, PageID.1259–60).

### 1.  Epilepsy

Coates argues that he has suffered from recurrent seizures since he was in his 20's, and that he takes medication twice per day in order to treat his epilepsy.

6

*Id.*  He says his epilepsy makes him vulnerable to COVID-19 because it is a

neurological condition that weakens his ability to cough.  (*Id.* at PageID.1283);

*United States v. Bandrow*, No. 17-CR-20077, 2020 WL 4050242, at *5 (E.D.

Mich. July 20, 2020).  But the Government argues that the Centers for Disease

Control and Prevention ("CDC") does not state that epilepsy or seizures place an

individual at a higher risk of contracting COVID-19.  (ECF No. 219,

PageID.1265).  Therefore, Coates' seizure disorder is not an extraordinary or

compelling reason that warrants granting compassionate release.  *See id.*

The CDC website does not contain much information about the effect that

COVID-19 has on people with epilepsy.  However, the website does provide a

script for healthcare workers to use when people call in with COVID-19 related

concerns.  Part 4 of the script is entitled "Assess for high risk conditions;" it

prompts the worker to ask if an individual has any ongoing medical conditions and

provides a list of medical conditions to ask a caller about.  One category of medical

conditions is "Neurological conditions that weaken ability to cough" and lists

epilepsy (seizure disorders) as a condition in this category.  Centers for Disease

Control and Prevention, *Telephone Response Guide*, https://perma.cc/54EB-F8B2.

Relatedly, Figure 1 on this website page also lists neurologic conditions that

weaken the ability to cough as a "high-risk" condition.  *Id.*  Hence, in this way, the

CDC recognizes on its website that epilepsy and seizures are high-risk conditions

to have with COVID-19 because those conditions weaken an individual's ability to cough.  Perhaps because of the constantly evolving knowledge building around COVID-19, the tool is imperfect but still helpful.  Even though the website does not list epilepsy and seizure disorders as conditions that place an individual at a higher risk of contracting COVID-19, the symptoms associated with those conditions appear to do so.

Courts have likewise concluded that epilepsy and seizure disorders can present an extraordinary and compelling circumstance that justifies granting compassionate release.  *United States v. Bandrow*, No. 17-CR-20077, 2020 WL 4050242, at *6 (E.D. Mich. July 20, 2020) (granting compassionate release and concluding that the defendant's epilepsy likely placed him at a heightened risk of serious illness or death from COVID-19).  Other courts have recognized the high-risk that neurological conditions present in conjunction with COVID-19.  *See also America v. Fitzgerald*, No. 18-CR-00266-PAB-3, 2020 WL 6743771, at *1 (D. Colo. Nov. 17, 2020) (reasoning that hypertension might result in an increased risk of severe illness from COVID-19, and that neurological conditions, like epilepsy, "could be risk factors.").

Coates' medical records from July 20, 2020 confirm that he suffers from epilepsy and recurrent seizures.  (ECF No. 222-2, PageID.1425).  The Government also accepts that Coates suffers from seizures.  (ECF No. 219, PageID.1265).

Coates' 2019 medical records state that he has a history of having more than one seizure per year. (ECF No. 222-1, PageID.1375).  Coates' 2019 medical records indicate that his last seizure was on August 20, 2018.  (ECF No. 222-1, PageID.1375, 1379); (*See also* ECF No. 228-1, PageID.1579) (October 1, 2020 records stating that Coates had no seizures in the last two years).  However, Coates' seizure disorder is still considered severe enough that his 2020 medical records indicate that he is restricted to the bottom bunk bed.  (ECF No. 222-2, PageID.1467).  Further, Coates takes medication every day in order to treat his seizure disorder, suggesting that it is a serious medical issue.  His most recent medical records from 2020 indicate that Coates takes 500 mg of Levetiracetam twice a day for his epilepsy.  (*Id.* at PageID.1416).  And given Coates' history of seizures, future seizures cannot be ruled out.

Coates' epilepsy is severe enough that he takes medication twice a day in order to treat it, and he has a history of recurrent seizures.  According to the CDC, Coates' neurological disorder is a high-risk condition that can make the ability to cough more difficult.  As a primary symptom of COVID-19 is a persistent cough, Coates' epilepsy may place him at an increased chance of complications from COVID-19 if he is unable to, or has difficulty, coughing.  This court therefore concludes that Coates' epilepsy weighs in favor of a finding of an extraordinary and compelling circumstance supporting release.

## 2.  Hypertension

In addition to epilepsy, Coates also suffers from hypertension and takes three medications to control it.  (ECF No. 220, PageID.1283–84).  He states that the CDC has concluded that hypertension may increase a person's risk of severe illness if he contracts COVID-19.  (*Id.* at PageID.1284).  He points out that courts within this district have routinely granted motions for compassionate release due in part to the movant's epilepsy and/or hypertension.  (*Id.* at PageID.1287).  The Government argues that hypertension is not a medical condition listed by the CDC that places Coates at a higher risk of severe illness from COVID-19; therefore, Coates' hypertension does not warrant compassionate release.  (ECF No. 219, PageID.1266).

The CDC website states that having hypertension "may increase [the] risk of severe illness from COVID-19."  Centers for Disease Control and Prevention, *People with Certain Medical Conditions*, https://perma.cc/CY2D-C688.  So, although the Government is correct that hypertension does not necessarily increase an individual's risk of severe illness from COVID-19, the CDC recognizes that it might increase the risk.  Although courts are split on whether high blood pressure is necessarily an extraordinary and compelling reason to grant compassionate release, many courts have granted compassionate release where the defendant suffers from high blood pressure along with other conditions that may increase the

risk of complications.  *See United States v. Nazzal*, 466 F. Supp. 3d 753, 753 (E.D.
Mich. 2020) (granting release where the defendant was 65 year old and suffered
from heart disease, severe asthma, benign prostate cancer, and high blood
pressure); *United States v. Mitchell*, No. 4:13-CR-20468, 2020 WL 3972656, at \*3
(E.D. Mich. July 14, 2020) (granting release where the defendant suffered from
diabetes and hypertension); *Segars v. United States*, No. 16-cr-20222, 2020 WL
3172734, at \*3 (E.D. Mich. June 15, 2020) (granting release where the defendant's
only CDC-recognized preexisting condition was hypertension and his hypertension
resulted in a stroke); *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452,
at \*5–6 (E.D. Mich. June 9, 2020) (granting release based on the defendant's
"well-documented and persistent hypertension" and the severe outbreak of
COVID-19 at the prison where he was incarcerated); *United States v. White*, No.
13-cr-20653, ECF No. 54 (E.D. Mich. May 20, 2020) (granting compassionate
release where the defendant's worsening hypertension and obesity were "serious
medical conditions" and finding that the defendant could not care for himself in
prison due to the lack of effective social distancing and hygiene).  *See also United
States v. Green*, No. 17-20822, 2020 WL 6144556, at \*5 (E.D. Mich. Oct. 20,
2020) (Michelson, J.) (concluding that the defendant's hypertension weighed in
favor of compassionate release because the hypertension was not well-managed

where it persisted even with medication, but ultimately denying compassionate release on other grounds).

In *Harrell v. United States*, the court granted release where the defendant was 45 years old and suffered from hypertension, high cholesterol, and diabetes. No. CR 13-20198, 2020 WL 2768883, at *3 (E.D. Mich. May 28, 2020). The court stated that the defendant's conditions did not "independently and perfectly fit the definition of severity, as outlined by the CDC," but his conditions "exacerbate[d] each other, placing [the defendant] in a much more vulnerable position than a healthy person if he were to get COVID-19, regardless of age." *Id.* The court cited a study on comorbidity and its impact on COVID-19 cases for the proposition that people with two or more comorbidities had poorer outcomes with COVID-19. *Id.* The most common comorbidity was hypertension, followed by diabetes. *Id.*

The Government acknowledges that Coates has hypertension. (ECF No. 219, PageID.1265). Coates' medical records confirm that he has hypertension and that he takes medication in order to control his hypertension. (ECF No. 221-1, PageID.1310; ECF No. 222-2, PageID.1466; ECF No. 228-1, PageID.1580). Coates' blood pressure was 127/80 at a recent documented appointment on August 6, 2020. (ECF No. 222-2, PageID.1414). His blood pressure was 130/78 on November 19, 2020—after he had contracted COVID-19. (ECF No. 228-1,

PageID.1550).  Coates' medical records show that his blood pressure is consistently around this level.  *See* ECF No.22-2.  The CDC website states that an individual has Stage 1 hypertension with a systolic blood pressure between 130-139 or a diastolic blood pressure between 80-89.  Centers for Disease Control and Prevention, *Facts About Hypertension in the United States*, https://perma.cc/2RYC-VJMY.  Elevated blood pressure exists where the systolic level is 120-29 along with a diastolic level of less than 80.  *Id.*  Coates therefore has Stage 1 hypertension because his diastolic blood pressure is consistently around 80, or his systolic level is around 130.

Further, how well-controlled Coates' hypertension is is a matter of interpretation.  His blood pressure numbers indicate that his blood pressure is not dangerously high and at Stage 1 hypertension.  Coates' reply asserts that Coates takes three medications to control his blood pressure.  (ECF No. 220, PageID.1283).  This is confirmed by his most recent medical records.  (ECF No. 228-1, PageID.1580).  His blood pressure has remained at Stage 1 with medication. Notably however, his hypertension appears to persist despite taking multiple medications for it.  The CDC states that hypertension may put people at higher risk for severe illness from COVID-19.  And the court in *Segars* noted that other medical sources, including the head of internal medicine at Henry Ford Hospital, indicate that people with hypertension are more vulnerable to the severe effects of

13

COVID-19.  *Segars*, 2020 WL 3172734, at *3.  Coates also suffers from multiple

comorbidities: epilepsy and high blood pressure; courts have noted that multiple

comorbidities can increase the likelihood of a poor outcome with COVID-19.  *See*

*Mitchell*, 2020 WL 3972656, at *3; *Harrell*, 2020 WL 2768883, at *3.

This court has considered the arguments presented by the parties, the case

law on hypertension, Coates' medical record, and the CDC information about

hypertension and COVID-19.  Given Coates' documented and persistent

hypertension, his multiple comorbidities, the CDC website information, and the

caselaw on this issue, the court concludes that Coates' hypertension, particularly

combined with his epilepsy, present an extraordinary and compelling factor that

weighs in favor of granting compassionate release.

### 3.  Age and Race

Coates is 47 years old.  He contends that his age group, 40-49, has three

times the chance of hospitalization and ten times the death rate of younger adults

aged 18-29.  (ECF No. 220, PageID.1282).  He also argues that his race, African

American, places him in the highest risk group of contracting COVID-19 by race:

African Americans have a 2.6x greater risk of contracting COVID-19, and 4.7x

greater risk of hospitalization after contracting COVID-19, and a 2.1x greater risk

of death from COVID-19 than non-Hispanic whites.  *Id.*  He therefore argues that

14

his age and race also constitute extraordinary and compelling circumstances justifying release.

The CDC website states that individuals aged 40-49 are 3x more likely to be hospitalized and 10x more likely to die from COVID-19 compared to 18-29 year old.  Centers for Disease Control and Prevention, *Rate Ratios Compared to 18-29 Year Olds*, https://perma.cc/URL5-CLCP.  Further, the website states that when compared to Non-Hispanic whites, African Americans are 2.6x more likely to contract COVID-19, 4.7x more likely to be hospitalized from COVID-19, and 2.1x more likely to die from COVID-19.  Centers for Disease Control and Prevention, *Hospitalization and Death by Race/Ethnicity*, https://perma.cc/C95Q-JRNA.

Statistically speaking, Coates' race and age put him at higher risk of serious illness from COVID-19 than other populations, even though his age does not place him in the most vulnerable age category.  And Courts have granted release to defendants who are in Coates' age range.  *Harrell v. United States*, No. CR 13-20198, 2020 WL 2768883, at *3 (E.D. Mich. May 28, 2020) (granting release where the defendant was 45 years old); *United States v. Mitchell*, No. 4:13-CR-20468, 2020 WL 3972656, at *3 (E.D. Mich. July 14, 2020) (defendant was 43 years old).  However, Coates' age and race do not in and of themselves present an extraordinary and compelling circumstance as statistical correlation is not necessarily the same as medical correlation to complications and severe outcomes.

### 4. COVID-19 Diagnosis

Most recently, Coates tested positive for COVID-19. (ECF No. 228-1, PageID.1556). Coates asserts that he has been suffering from severe symptoms since contracting the virus, including difficulty breathing, cough, night sweats, and other flu-like symptoms. (ECF No. 229, PageID.1734). He argues that reinfection is possible and therefore states that his infection with COVID-19 is a compelling and extraordinary circumstances that warrants his release. The Government argues that reinfection of COVID-19 is highly unlikely, and that an individual who is re-infected with COVID-19 will have less severe symptoms the second time that he contracts the virus. (ECF No.227, PageID.1537). Further, the Government submitted Coates' medical records from November 16 to November 19, 2020, which indicate that he was not suffering from severe COVID-19 symptoms.

Coates' most recent medical records from November 19, 2020 state that he was suffering from a loss of taste and smell. (ECF No. 228-1, PageID.1549). On November 16, 2020 a medical provider assessed Coates and noted that he was not coughing, although Coates did complain of having a cough with a little shortness of breath on that date. (*Id.* at PageID.1556). Coates' vital signs were also stable and his lung sounds were clear. (*Id.* at PageID.1557). The medical records indicate that Coates was not suffering from severe illness from COVID-19 immediately after he tested positive. However, the medical records provided by

16

the Government only contain records that extend three days past Coates' diagnosis date.  COVID-19 is an illness that often presents with mild symptoms that increase in severity over a short period of time.  The evidence in the record suggests that Coates' symptoms, while initially mild, are growing in severity.  Coates states that he now has difficulty breathing, has a persistent cough, and has other flu-like symptoms, like aching and night sweats.  He also states that he has not been seen by a doctor, but that health care workers intermittently check his vitals—Coates' medical records are consistent with this assertion.  (*See* ECF No. 228-1).  The medical records show that several different nurses have assessed Coates and checked his vital signs, but he has not been assessed or treated by a doctor.  Coates also states that he is being kept in isolation while he tries to recover from COVID-19.  (ECF No. 229, PageID.1733).

Further, it is possible that Coates could become re-infected with COVID-19. Supplemental briefing submitted by the parties suggests that much remains unknown about COVID-19 reinfection.  As the government points out, some studies have indicated that reinfection is rare.  Apoorva Mandavilli, *Immunity to the Coronavirus May Last Years, New Data Hint*, New York Times (November 17, 2020), https://perma.cc/F5J3-CXBF.  However, information is sparse and cases of COVID-19 reinfection are beginning to appear with greater frequency.  Joshua Cohen, *Though Rare, The Number of Reinfections With Covid-19 Is Growing*,

Forbes (November 16, 2020), https://perma.cc/QG5K-6P52; Brenda Goodman,

*Study Confirms It's Possible to Catch COVID Twice*, WebMD (Aug. 24, 2020),

https://perma.cc/YCA2-RAU4.  Further, there have been documented cases where

reinfection has led to more severe symptoms than the first COVID-19 infection.

Abantika Ghosh, *US reports first case of Covid reinfection with more severe*

*symptoms second time*, ThePrint (Oct. 13, 2020), https://perma.cc/M4V4-WGU7.

Here, Coates has contracted COVID-19, and not surprisingly given his

medical conditions, appears to be suffering from increasingly severe symptoms.

Studies and literature show that COVID-19 reinfection can occur and that there is

no firm conclusion regarding the likelihood of reinfection.  The court is wary of

discounting Coates' risk of reinfection given the current spike in COVID-19 cases

nationwide and the current severe COVID-19 symptoms that Coates asserts he is

experiencing.  In addition, Coates' other medical conditions cannot be properly

attended to while he is in isolation and trying to recover from COVID-19.  The

court therefore concludes that Coates' current COVID-19 infection weighs in favor

of granting release.

### 5.  BOP Conditions at FCI Oakdale II

Coates is housed at FCI Oakdale II.  (ECF No.220, PageID.1277).  He

asserts that being housed in prison increases his risk of contracting COVID-19.  *Id.*

He also asserts that the BOP has only tested one third of the inmates in its custody, and that 114 inmates have died from COVID-19 within the BOP, including one inmate at FCI Oakdale II.  *Id.*  He asserts that COVID-19 continues to spread at FCI Oakdale II.  *Id.*  The Government argues that the BOP has implemented procedures to mitigate the risk from COVID-19 within its facilities.  (ECF NO. 219, PageID.1258).  It asserts that the BOP has increased the number of inmates granted home confinement (over 7,660) and has restricted movement within and between facilities.  (*Id.* at PageID.1258–61)

District courts have considered motions for compassionate release from persons incarcerated at FCI Oakdale I and II.  These courts have often concluded that these prisons have maintained the virus reasonably well and that the conditions within these prisons do not justify compassionate release.  *See, e.g.*, *United States v. Smith*, No. CR 13-201, 2020 WL 6308345, at *2 (E.D. La. Oct. 28, 2020) (denying compassionate release where there were only two active cases of COVID-19 among the inmate population at FCI Oakdale I); *United States v. Boulton*, No. CR 19-31-SDD-RLB, 2020 WL 6146489, at *6 (M.D. La. Oct. 20, 2020) (denying compassionate release due to the "significant efforts" being taken at FCI Oakdale to curb the virus' spread, including granting home confinement to appropriate inmates); *United States v. Jones*, No. 3:14-CR-117-DPJ-FKB, 2020 WL 5995689, at *4 (S.D. Miss. Oct. 9, 2020) (denying compassionate release,

19

stating that FCI Oakdale I "got its early outbreak under control"); *United States v. Magana*, No. 4:13-CR-14(1), 2020 WL 5912557, at *4 (E.D. Tex. Oct. 5, 2020) (denying compassionate release for an inmate at FCI Oakdale II, finding that the BOP could manage the COVID-19 outbreak within the facility and could treat him if he did contract COVID-19); *United States v. Joseph*, No. CR 16-91, 2020 WL 5761190, at *2 (E.D. La. Sept. 28, 2020) (denying compassionate release, noting that FCI Oakdale I only reported 3 positive COVID-19 cases among an inmate population of 892).

However, unlike the cases cited above, FCI Oakdale II is currently experiencing an outbreak of COVID-19 among its inmates and staff.  According to the BOP website, there are currently 51 inmates and 12 staff with COVID-19 at FCI Oakdale II, out of a total of 829 inmates.  Federal Bureau of Prisons, *COVID-19 Coronavirus*, https://perma.cc/E3RV-N6ZX; https://perma.cc/L3EP-8VH3. One inmate has died from COVID-19 and no staff have died of COVID-19.  In addition, 30 inmates and 6 staff have recovered from COVID-19.  *Id.*  These statistics demonstrate that FCI Oakdale II is having difficulty curbing the spread of COVID-19.  Further, Coates was in lock down at the time that he contracted COVID-19, and he only had contact with staff at FCI Oakdale at the time that he contracted the virus.  (ECF No. 229, PageID.1773).  Coates asserts that the staff regularly did not wear masks when they interacted with him.  *Id.*  The fact that

Coates contracted COVID-19 while he was in isolation decreases the court's confidence that FCI Oakdale II is taking adequate steps to control the spread of COVID-19.  Given the recent resurgence of COVID-19 throughout the nation, the court is especially cognizant of the risk and danger of contracting COVID-19, and Coates in fact has already contracted COVID-19 at FCI Oakdale II.

Statistics from FCI Oakdale II indicate that the facility is currently experiencing an outbreak of COVID-19 among its inmates and staff, much like the current surge of COVID-19 infections throughout the country.  Coates has contracted COVID-19 while being housed at the prison, is currently suffering severe symptoms from the virus, and he is at risk of contracting the virus again. Coates may also suffer from more serious illness if he contracts COVID-19 a second time.  For these reasons, the conditions at FCI Oakdale II do not allay the court's concerns.

### 6.  Other Health Conditions

Coates asserts that he has an untreated hernia that requires surgery.  (ECF No. 220, PageID.1287).  However, due to restrictions in the BOP, he cannot get the necessary surgery.  *Id.*  He also states that he has a large cavity that is being left untreated because of the COVID-19 restrictions.  *Id.*  He states that both conditions have led to extreme and unnecessary pain for him.  *Id.*

Coates' medical records from March 15, 2019 state that he has an umbilical hernia omentum that causes Coates no symptoms and does not require treatment. (ECF No. 222-1, PageID.1334, 1336).  However, medical records from November 6, 2020 state that Coates has an umbilical hernia that is "tender[,]" "still reducible[,]" and "[s]hould be evaluated by [a] surgeon to correct."  (ECF No. 228-1, PageID.1573–74).  It is thus clear from Coates' recent medical records that he has had a painful hernia for over one year that requires evaluation by a surgeon to treat.  Coates' evaluating doctor placed a consultation request to general surgery to evaluate Coates by the end of November 2020.  (*Id.* at PageID.1574).  However, the court is uncertain about whether Coates has indeed been evaluated by a surgeon for his hernia, or whether he would be able to get surgery, if required, within a reasonable time frame.

Coates's medical records also include some of his dental history.  The records state that as of November 3, 2020, Coates has dental caries.[1]  (ECF No. 228-1, PageID.1689).  The caries extend into the pulp and are causing pain to Coates.  (*Id.* at PageID.1616).  Coates was prescribed amoxicillin and ibuprofen in order to treat the caries and his pain.  (*Id.* at PageID.1702–03).  The records do not

---

[1] "Dental caries" is another term for cavities.  *See,*
https://www.cdc.gov/healthywater/hygiene/disease/dental_caries.html

indicate that Coates is receiving or is set to receive any other treatment for his dental ailments outside of the medication.

Coates has an untreated hernia for which a surgical consultation has been recommended.  In addition, Coates has  painful dental caries that require treatment. The BOP is treating Coates' conditions as it is currently able with its COVID-19 restrictions.  However, Coates is not currently receiving complete treatment in order to fix his very curable ailments.  Coates has thus been left to endure unnecessary pain for several months.  Although Coates' conditions are relatively minor in comparison to some others, the court will take into account the inability of the BOP to completely treat these conditions in its consideration of this Motion.

### 7.  Caretaker Responsibilities/Mother's Health Conditions

Coates asserts that his mother is sick and terminal and requires his assistance to care for herself.  (ECF No. 220, PageID.1285).  Coates argues that his mother's need for his assistance is an extraordinary and compelling reason that justifies compassionate release.  *Id.*  The Federal Sentencing Guidelines provide some guidance about what family circumstances may constitute an extraordinary and compelling circumstance justifying release:

> (C) Family Circumstances.—
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. §1B1.13. [2]  According to the guidelines, Coates' mother's illness is not a situation that constitutes an extraordinary and compelling reason justifying release. And courts have concluded that taking care of an ailing parent does not present an extraordinary and compelling reason to grant release.  *See United States v. Newton*, No. 18-CV-20483, 2020 WL 4592891, at *4 (E.D. Mich. Aug. 11, 2020);*United States v. Wilson*.  No. 15-20281, 2020 WL 3172647, at *3 (E.D. Mich. June 15, 2020)*See also United States v. White*, No. 15-CR-20040-01, 2020 WL 2733891, at *5 (E.D. Mich. May 26, 2020) (finding that the defendant caring for his mother, who required 24-hour care, did not constitute an extraordinary or compelling circumstance under the Family Circumstances or the Other Reasons category of the Sentencing Guidelines); *United States v. McCune*, No. 16-20359, 2020 WL 4734910, at *4 (E.D. Mich. Aug. 14, 2020) (finding that defendant caring for his elderly mother was not an extraordinary and compelling reason warranting

---

[2] In its most recent decision, the Sixth Circuit Court of Appeals determined that the court need not consider the policy statement contained in U.S.S.G. § 1B1.13. *United States v. Jones*, 980 F.3d 1098, 1108 (6th Cir., Nov. 20, 2020).  However, the policy statement's definition of what constitutes an extraordinary and compelling, while not binding on the court, provides some context.

compassionate release); *United States v. Anderson*, No. 13-20704-02, 2020 WL 6060658, at *4 (E.D. Mich. Oct. 14, 2020) (finding that caring for his legally incapacitated father was not an extraordinary or compelling reason to grant compassionate release).   This court agrees with those prior findings.

Upon consideration of Coates' motion and arguments, the court is satisfied that extraordinary and compelling reasons exist that justify Coates' release from BOP custody.   Coates' hypertension and epilepsy are, individually, conditions that could result in severe illness if Coates is infected with COVID-19.   The conditions together further exacerbate any symptoms that Coates might get if he is stricken with the virus, and Coates in fact has been experiencing increasingly severe symptoms since contracting COVID-19.   Further, FCI Oakdale is currently experiencing an outbreak of COVID-19, and notwithstanding the safety measures in place, Coates contracted the virus while housed in isolation at FCI Oakdale, and appears to be suffering from severe symptoms.   Coates' infection *while in isolation* suggests that the measures taken to curb the spread of the virus are less robust than they appeared at first blush.   Coates is also at risk of COVID-19 reinfection if he continues to be incarcerated at FCI Oakdale, and it is uncertain if Coates will suffer from more severe symptoms should he contract the virus again.   Further, the prison is likely unable to fully treat Coates' other medical conditions—including a hernia and large cavity—while COVID-19 restrictions remain in place.   All of these

reasons, together, constitute an extraordinary and compelling circumstance that justifies granting Coates' motion for compassionate release.

## B. 18 U.S.C. § 3553(a) Factors

Coates argues that the §3553(a) factors also weigh in favor of his release. He points out that his offenses were non-violent drug offenses committed 7.5 years ago and that he has been in constant custody for the last five years, having served close to 60% of his sentence.  (ECF No. 220, PageID.1292).  The Government contends that Coates is a danger to the community under USSG §1B1.13(2) and18 U.S.C. §3142(g) and that the sentencing factors under §3553(a) do not support release.  (ECF No. 219, PageID.1267–68).  These factors include, but are not limited to:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
> [ . . . ]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553.  The Government highlights that fact that Coates was involved

in an opioid distribution conspiracy and distributed prescription pain killers that

can cause serious side effects and even death.  It asserts that Coates will likely

engage in the same behavior if released; therefore, Coates presents a danger to the

community.  (ECF No. 219, PageID.1270).

Courts within this district have granted compassionate release to defendants

convicted of distribution of controlled substances.  *See Harrell v. United States*,

No. CR 13-20198, 2020 WL 2768883, at *3 (E.D. Mich. May 28, 2020).  In

*Harrell*, the defendant was convicted of drug conspiracy and intent to distribute

charges.  *Id.* at *1.  The court found that the defendant had completed a GED

program, drug counseling courses, re-entry programs, and several apprenticeship

programs  *Id.* at *3.  The court also noted that the defendant could live with his

sister if released.  *Id.*  The court concluded that the defendant's commitment to his

programs and the willingness of his family to take him in and support his reentry

warranted his release.  *See id.*

In this case, Coates was committed and convicted of a non-violent drug

offense.  The Government notes the seriousness of Coates' crime and states that

"[r]eleasing him now would likely lead to him engaging in the same conduct . . . ."

(ECF No. 219, PageID.1269–70).  But the Government has offered very little

beyond Coates' original crime and conviction to support its conclusion that he is a

danger to the community.  Coates was convicted for his participation in a drug

scheme that also required the participation of health care professionals like doctors

and pharmacists.  In order to engage in the same conduct upon release, he would

have to find one or more other health care professionals willing to jeopardize their

license(s) and engage in a serious controlled substance crime.  While such a

prospect is not impossible, such schemes do not lend themselves to easy entry as

suggested.  So, although Coates' crime—the distribution of opioids—is dangerous,

the dangerousness is mitigated by the fact that Coates cannot prescribe medications

and would have to find other licensed professionals to participate in the scheme if

he were to engage in the same conduct upon release.  Further, he committed the

crime 7.5 years ago and has been in constant BOP custody for the last 5 years,

likely limiting his contacts with current participants in such schemes.  And neither

party references behavior problems while Coates has been incarcerated.  The court

does note that Coates has not yet started or completed the Residential Drug

Treatment Program recommended in the court's Judgment.  (ECF No. 220,

PageID.1281).  Coates' reply asserts that he is scheduled to enter the program at

the beginning of 2021.  *Id.*  Successful completion of this program would advance

his release date by 12 months.  *Id.*  However, Coates' *pro se* Motion asserts that he

is not able to attend the drug program at FCI Oakdale and cannot be transferred to

another facility in order to complete the program due to COVID-19.  (ECF No.

213, PageID.1243).

Further, Coates received a substantial sentence of 110 months of

imprisonment and 3 years of supervised release for his crimes, for which he has

served the majority of—about 59%.  At least one of Coates' co-defendants, Annie

Meeks, has been released for committing similar crimes to Coates.  (ECF No. 212,

PageID.1242).  Meeks was charged in more counts of the Government's

indictment than Coates—both were charged in count one, and Meeks was charged

in counts 2-11, while Coates was additionally charged in counts 12-13.  (ECF No.

66, PageID.145–47).  Although other factors besides the convicted offense

contribute to a court's sentencing decision, Meeks received a significantly smaller

sentence than Coates, 24 months' imprisonment and two years of supervised

release, for her similar role in the drug scheme.  (ECF No. 156, PageID.771).

Thus, releasing Coates at this stage would not result in a particularly disparate

sentence.  And the release of a co-defendant who engaged in similar conduct

suggests that Coates can also similarly be released without grave concern that he

will attempt to repeat his crimes.

Coates was convicted of a dangerous, but non-violent drug offense.  Even

without the completion of the drug treatment program, Coates has served about

59% of his sentence.  The record does not indicate that Coates has had behavior or

disciplinary problems while in BOP custody.  Further, Coates asserts that he will

go to Kentucky to live with and care for his mother upon release, and Coates also

maintains that he can continue his sentence in home confinement if released from

BOP custody.  The court therefore finds that the § 3553(a) factors weigh in favor

of Coates' release.

### C. Home Confinement

Coates states that as an alternative to reducing his sentence to time served, the

court should allow him to complete his remaining sentence via home confinement.

(ECF No. 220, PageID.1293).  Coates states that if released on home confinement,

he will go live with his mother in Kentucky in order to care for her.  (*Id.* at

PageID.1293–94).

This Court does not have the statutory authority to modify a defendant's current

sentence to home confinement.  *United States v. Amarrah*, 458 F. Supp. 3d 611,

620 (E.D. Mich. 2020).  This court also does not have the authority to "review the

BOP's internal confinement decision to deny compassionate release."  *Id.*; *Crowe

v. United States*, 430 F. App'x 484 (6th Cir. 2011).  However, this court has the

authority to reduce a defendant's current sentence to time served and impose a new

term of supervised release and/or home confinement.  *See Amarrah*, 458 F. Supp.

3d at 620 (reducing the defendant's sentence to time served and imposing a new

term of supervised release, with the first 12 months of the release to be served in home confinement). *See also United States v. Williams*, No. 15-20462, 2020 WL 4040706, at *2 (E.D. Mich. July 17, 2020) (implementing the same procedure). This court will therefore follow suit and reduce Coates' sentence to time served and implement a term of supervised release of 4 years with the first year to be served in home confinement.

## IV. CONCLUSION

For the reasons stated above, the court finds that Coates' co-morbidities—each of which may lead to a greater risk of complications from a COVID-19 infection, his recent COVID-19 infection which has led to escalating symptoms, and the conditions at FCI Oakdale II weigh in favor of his release. The court also concludes that compassionate release is consistent with the factors outlined in 18 U.S.C. § 3553(a). The court will therefore **GRANT** Coates' Motion and reduce Coates' sentence to time served and set a new term of supervised release to last for 4 years, the first year of which shall be served in home confinement. In addition to the original conditions of his supervised release, Coates <u>must</u> participate in and complete a drug treatment program to be selected by U.S. Probation during his term of supervised release. It is further **ORDERED** that this order is stayed for at least fourteen days to ensure that Coates is properly quarantined and does not have COVID-19 or is medically determined to be no longer contagious upon his release,

31

to allow the BOP to verify Coates' residence and release plan, and to make appropriate travel arrangements.  Coates shall be released as soon as his quarantine is complete, he is medically cleared to travel, and his release plan is verified.  If more than fourteen days are needed, then the parties are ORDERED to notify the court and show cause why the stay should be extended.  Upon release, Coates must self-quarantine for an additional period of two weeks.

**SO ORDERED**.

Dated:        December 23, 2020

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge